UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

GILL HOLDING COMPANY, INC., a
Michigan corporation,

    dec

        Plaintiff,

Case No. 1:17-cv-1079

vs

HON.

DAVIS CAPITAL ADVISORS, LLC, an
Illinois limited liability company,

        Defendant.

---

James R. Peterson (P43102)
Christopher J. Schneider (P74457)
MILLER JOHNSON
Attorneys for Plaintiff
45 Ottawa Avenue, S.W., Suite 1100
Grand Rapids, MI  49503
(616) 831-1700

---

# COMPLAINT

Plaintiff, Gill Holding Company, Inc. ("Gill") states:

1. This is a declaratory judgment action.  Defendant, Davis Capital Advisors, LLC ("Davis") has repeatedly and improperly demanded that Gill pay $2,475,000 for brokerage services that Davis allegedly rendered *to the opposing party in a failed transaction*.  But no contract requires Gill to pay for those services.  And Gill has not interfered with any contract or business expectancy held by Davis.  Rather, Davis is trying to strong-arm Gill into paying millions of dollars in fees that Gill does not owe.

## Parties

2. Gill is a Michigan corporation that, among other things, supplies automotive parts to the automotive industry.  Gill's headquarters is in Grand Rapids, Michigan.

3. Davis is an Illinois limited liability company that provides investment banking services. Davis's headquarters is in Chicago, Illinois. Davis does business in Michigan.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction under 28 U.S.C. §1332 because there is complete diversity of citizenship between the Plaintiff and the Defendant, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. Venue is proper in this district under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this action occurred in this district and because Defendant has conducted and continues to conduct business in Michigan.

## Background

6. Beginning in 2016 and continuing into 2017, Gill contemplated selling its business. To facilitate that potential sale, Gill engaged Deloitte Corporate Finance, LLC ("Deloitte") to find a buyer.

7. Deloitte identified potential buyers for Gill, including Jimmie Comer ("Comer").

8. Comer engaged Davis as his broker for the potential transaction with Gill.

9. Gill and Comer, through his entity Augusta Acquisition Company, LLC ("Augusta"), entered into a letter of intent in August 2017 ("LOI") for a potential sale of Gill to Augusta. However, Comer needed to obtain both debt and equity financing to complete the contemplated transaction.

10. As Comer's broker, Davis helped Comer seek both debt and equity financing for the potential transaction, including possible debt financing from Summit Partners Credit Advisors, L.P. ("Summit").

11. On May 26, 2017, Summit and Davis entered into a Confidentiality Agreement (the "Confidentiality Agreement). (**Exhibit 1**.)

12. The Confidentiality Agreement is a routine agreement to protect confidential information provided by Augusta, or by Davis on behalf of Augusta, to Summit.

13. Gill is not a party to the Confidentiality Agreement.

14. The Confidentiality Agreement does not require Gill to pay any fee to Davis. And it does not in any way prohibit Gill from obtaining financing from Summit in a later transaction.

15. The transaction contemplated by the LOI was not timely consummated because Comer/Augusta was not able to obtain debt and equity financing consistent with the terms of the LOI within the time provided under the LOI.

16. Despite its failure to satisfy the conditions of the LOI, Comer/Augusta continued to work to obtain the necessary debt and equity financing to allow it to consummate the transaction with Gill. Comer/Augusta hoped that, if it was able to execute on terms consistent with the LOI, then the Gill Board and shareholders would still have a desire to move forward with the transaction.

17. However, Gill ultimately terminated discussions with Comer/Augusta regarding a potential transaction when it became clear that the equity financing that Comer was able to obtain would not meet the requirements of Gill.

18. When the potential sale did not close as contemplated by the LOI, Chase Bank, one of Gill's lenders, decided that it no longer wanted to finance Gill. Accordingly, Gill needed to refinance its loan with Chase on an expedited basis.

19. Gill again engaged Deloitte, this time to find a new lender to replace Chase.

20. Deloitte identified a number of parties, including Summit, as potential lenders who could refinance the loan.

21. Deloitte's identification of Summit as a potential lender is unsurprising. Summit is a Boston-based private equity investment firm that invests in a broad range of companies in North America and Europe. Upon information and belief, Summit has raised more than $20 billion in capital through multiple equity and fixed income funds.

22. In other words, Summit is a major, global equity investment firm that regularly provides financing to companies. That both Davis and Deloitte identified Summit as a potential lender for the two separate transactions (the potential sale of Gill's business and the refinancing of Gill's loan with Chase) is foreseeable.

23. Gill ultimately chose Summit as the lender to refinance Gill.

24. Accordingly, Gill and Summit have proceeded with a deal for Summit to refinance Gill's loan with Chase by the end of 2017.

25. Davis is not in any way involved with the refinancing of Gill's loan with Chase.

26. Nevertheless, when Davis learned that Summit was the lender that would refinance Gill's loan with Chase, Davis made demands upon Summit and Gill for payment.

27. Specifically, Davis has demanded that Gill pay $2,475,000 for Davis's work as Comer's broker on the attempted acquisition of Gill's business.

28. Gill rightfully has refused to pay Davis, because Gill has no contract with Davis, and Gill is not otherwise obligated to pay Davis any amount.

29. But Davis has persisted with its wrongful demand for payment. On December 7, 2017, Davis's attorney sent Gill's attorney a demand letter (the "Demand Letter"), again demanding payment of $2,475,000. (**Exhibit 2**.)

30. Because Davis has persisted with its wrongful demands, which expose Gill to significant potential damages, Gill brings this declaratory judgment action to resolve the parties' rights and responsibilities.

## Count I – Declaratory Judgment

31. Gill incorporates by reference the preceding paragraphs.

32. Davis has repeatedly and incorrectly demanded that Gill pay Davis $2,475,000 for Davis's work as Comer's broker on the attempted acquisition of Gill's business.

33. But Gill does not owe Davis any amount.

34. Davis and Gill do not have any contract that requires Gill to pay Davis.

35. Gill did not intentionally, improperly, or tortiously interfere with any contract or business relationship between Davis and Summit and/or Augusta, including the Confidentiality Agreement. Rather, Gill merely obtained financing from Summit for a separate refinancing transaction.

36. Summit has not breached the Confidentiality Agreement by refinancing Gill's loan with Chase. The Confidentiality Agreement only applies to Confidential Material provided to Summit by or on behalf of *Augusta*. The Confidentiality Agreement does not apply to information that *Gill* provided to Summit as part of the refinancing transaction.

37. Even if the Confidentiality Agreement does apply to information that Gill provided to Summit as part of the refinancing transaction, Summit has not breached the Confidentiality Agreement. The Confidentiality Agreement expressly allows Summit to disclose

5

Confidential Material to Gill. The Confidentiality Agreement also allows Gill to authorize Summit to disclose Confidential Material to others.

38. Even if the Confidentiality Agreement does apply to information that Gill provided to Summit as part of the refinancing transaction, Gill has no liability to Davis for Summit's use of Confidential Material. The Confidentiality Agreement states: "[N]either the Company nor any of its agents, representatives or affiliates shall have any liability to . . . *any other party* resulting from the use of the Confidential Material by [Summit]." (Emphasis added.)

39. Davis is simply trying to strong-arm Gill into paying millions of dollars for services that Davis allegedly rendered to the opposing party during a failed transaction.

40. The facts and circumstances of this case present an actual controversy regarding the contractual and legal rights and obligations of the parties.

41. The rights of the parties can only be determined by a declaratory judgment.

42. Gill is entitled to a declaratory judgment stating: (a) Gill did not tortiously interfere with any contract between Davis and Summit and/or Augusta; (b) Gill did not tortiously interfere with any business relationship or expectancy between Davis and Summit and/or Augusta; and (c) Gill does not owe any amount of money to Davis.

**Therefore**, Gill requests that this Court declare: (a) Gill did not tortiously interfere with any contract between Davis and Summit and/or Augusta; (b) Gill did not tortiously interfere with any business relationship or expectancy between Davis and Summit and/or Augusta; and (c) Gill does not owe any amount of money to Davis.

                                                    MILLER JOHNSON
                                                    Attorneys for Plaintiff

Dated:  December 11, 2017       By  /s/ Christopher J. Schneider
                                                            James R. Peterson (P43102)
                                                            Christopher J. Schneider (P74457)
                                                    Business Address:
                                                            45 Ottawa Avenue, S.W., Suite 1100
                                                            Grand Rapids, MI  49503
                                                 Telephone:  (616) 831-1700